<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

CYNTHIA PALUMBO,                                      :
                                                     :
     Plaintiff,                            :          Civil Action No. 09-5953 (SRC)
                                                     :
     v.                                    :          **OPINION**
                                                     :
COMMISSIONER OF SOCIAL                               :
SECURITY,                                            :
                                                     :
     Defendant.                            :
_____:

<u>**CHESLER, District Judge**</u>

     This matter comes before the Court on the appeal by Plaintiff Cynthia Palumbo ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act").  This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision is supported by substantial evidence and is hereby **AFFIRMED**.

## I.  BACKGROUND

     The following facts are undisputed.  Plaintiff was born in 1946.  She has worked as a janitor and as a receptionist.  In 2005, she filed an application for Supplementary Security Income benefits, alleging disability since January 1, 2002.  Plaintiff's claims were denied by the Commissioner initially and on reconsideration.  Pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Joel H. Friedman (the "ALJ").  The ALJ denied Plaintiff's claim in an unfavorable decision issued on July 23, 2007.  After the Appeals Council denied

Plaintiff's request for review of the ALJ's decision, that decision became final as the decision of the Commissioner of Social Security.  Plaintiff then filed the instant appeal of the Commissioner's decision.

A subsequent application for Supplementary Security Income benefits was approved, and the Commissioner has recognized Plaintiff as disabled as of October 2, 2007.

## II.  DISCUSSION

### A.    <u>Standard of Review</u>

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Stunkard v. Sec'y of Health and Human Services</u>, 841 F.2d 57, 59 (3d Cir. 1988); <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  <u>See</u> <u>Taybron v. Harris</u>, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992), <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u> <u>Williams</u> <u>v. Shalala</u>, 507 U.S. 924 (1993) (citing <u>Early v. Heckler</u>, 743 F.2d 1002, 1007 (3d Cir. 1984)).  If the ALJ's findings of fact are supported by substantial

evidence, this Court is bound by those findings, "even if [it] would have decided the factual

inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v.

Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

      In determining whether there is substantial evidence to support the Commissioner's

decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses

and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)

subjective evidence of pain testified to by the claimant and corroborated by family and neighbors;

(4) the claimant's educational background, work history and present age."  Blalock v.

Richardson, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that

supports a contrary conclusion does not undermine the Commissioner's decision so long as the

record provides substantial support for that decision."  Sassone v. Comm'r of Soc. Sec., 165 Fed.

Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.**    **Standard for Awarding Benefits Under the Act**

      The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. §

423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and

aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if

he is unable to "engage in substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is

predicated on whether a claimant's impairment is so severe that he "is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §
423(d)(2)(A).  Finally, while subjective complaints of pain are considered, alone, they are not
enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists,
a claimant must present evidence that his or her affliction "results from anatomical,
physiological, or psychological abnormalities which are demonstrable by medically accepted
clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

## C.     The Five-Step Evaluation Process

Determinations of disability are made by the Commissioner, pursuant to the five-step
process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one
through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Gist v. Barnhart, 67 Fed. Appx.
78, 81 (3d Cir. 2003).

At the first step of the evaluation process, the Commissioner must determine whether the
claimant is currently engaged in substantial gainful activity.[1]  20 C.F.R. § 404.1520(b).  If a
claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability
claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a
severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it
"significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In
determining whether the claimant has a severe impairment, the age, education, and work
experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe
impairment, the Commissioner addresses step three of the process.

_____

[1] Substantial gainful activity is "work that involves doing significant and productive
physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

4

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[2] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  (Id.)  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  In Burnett, the Third Circuit set forth the analysis at step four:

In step four, the ALJ must determine whether a claimant's residual functional

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is

deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

demonstrate that there are other jobs existing in significant numbers in the national economy

which the claimant can perform, consistent with his medical impairments, age, education, past

work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If

the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be

found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the

Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the

burden of establishing the existence of jobs in the national economy.  These guidelines dictate a

result of "disabled" or "not disabled" according to combinations of factors (age, education level,

work history, and residual functional capacity).  These guidelines reflect the administrative notice

taken of the numbers of jobs in the national economy that exist for different combinations of

these factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a

claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide

with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an

individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The

claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P,

Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). Moreover, "the combined impact of the impairments will be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523. However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits. See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

    D.    The ALJ's decision

In brief, the issue before the ALJ was whether Plaintiff was disabled under the Social Security Act during the period which began on February 2, 2005, and which ended on July 23, 2007, the date on which the ALJ issued his decision.[3] The ALJ examined the record and determined that: 1) at step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period; 2) at step two, Plaintiff had obesity, asthma, status post-bilateral carpal surgery, diabetes mellitus, and hypertension, which were "severe" impairments within the meaning of the Regulations; 3) at step three, Plaintiff's impairments, singly or in combination, did not meet or equal an impairment in the Listings; 4) at step four, Plaintiff retained the residual functional capacity to perform the full range of sedentary work; she was able to perform her past

---

[3] Plaintiff's brief states that the appeal is limited to the period of February 2, 2005 until October 2, 2007 – two months after the ALJ issued his decision. (Pl.'s Br. 4.) This Court does not see how the period covered by the ALJ's decision can extend past the date of that decision.

relevant work as a receptionist.  The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, during the relevant time period.

       E.     <u>Plaintiff's Appeal</u>

Plaintiff appeals the ALJ's decision on several grounds.  In large part, Plaintiff groups her arguments into four areas, based on Plaintiff's problems with: 1) the hands, wrists, and arms; 2) the back and knees; 3) the eyes; and 4) mental health.  Indeed, this seems to be a sensible way to organize Plaintiff's difficulties.

Plaintiff begins by attacking the ALJ's findings which defined Plaintiff's severe impairments, calling them inconsistent.  Plaintiff discusses the ALJ's consideration of her problems with depression at step two, but fails to make clear where the inconsistency lies. Similarly, Plaintiff's discussion of the ALJ's consideration of her multiple joint and back osteoarthritis fails to make clear where the inconsistency lies.

       *1.*     *Difficulties with the hands, wrists, and arms*

Plaintiff argues that the ALJ failed to "consider, discuss, or evaluate the Plaintiff's severe generalized osteoarthritis with multiple joint pains and limitations." (Pl.'s Br. 26.)  This is not correct: the ALJ noted that x-ray results following Plaintiff's carpal tunnel surgery "showed osteoarthritis over the first carpal/metacarpal joint." (Tr. 43.)  The ALJ appears to have included osteoarthritis within the category of "status post-bilateral carpal surgery."  Furthermore, for the sake of the discussion, even if the ALJ had overlooked Plaintiff's osteoarthritis, the question for this Court would be whether that was a material error or a harmless one.  For it to be a material error, Plaintiff would need to persuade that the ALJ's determination at step four was not supported by substantial evidence.  Plaintiff might make considerable headway toward that end

by pointing to evidence that the osteoarthritis left her unable to work as a receptionist.[4]  Plaintiff

has not, however, done so.

Plaintiff next argues that, for the majority of the period at issue, her hands were

immobilized in casts or wrist splints from her three surgeries.  (Pl.'s Br. 26-27.)  This contention,

if proven true, certainly would be cause for concern.  The evidence, however, is not clear on this

point.  According to the history given in Plaintiff's brief, Plaintiff underwent surgery on her right

hand in April of 2005, followed by surgery on her left hand several weeks later.  (Pl.'s Br. 9.)  In

April of 2006, Plaintiff was instructed to wear thumb and wrist splints for all activities for two to

three months.  (Pl.'s Br. 12.)  Plaintiff underwent another surgery on the right hand on December

1, 2006.  (Pl.'s Br. 13.)  While the claim of three surgeries during this period certainly has been

supported, Plaintiff has not pointed to the evidence of record that demonstrates the length of time

that her hands were immobilized, and the Court is not obliged to scour the record to find out.

Plaintiff has not marshaled the evidence so as to prove her claim that her hands were

immobilized for a majority of the nearly two years of the period at issue.

It is clear that Plaintiff had persistent and serious problems with her hands during the

period at issue.  It is not clear, nonetheless, that these problems had a disabling effect on

Plaintiff's ability to work.  The ALJ did not overlook the evidence related to Plaintiff's hand

problems.  Rather, he directly addressed the issue at step four as he considered Plaintiff's

assertion that she could not use her hands sufficiently to work.  (Tr. 45.)  To support his

conclusion that Plaintiff retained sufficient use of her hands to perform her past work as a

---

[4] Indeed, this is the question that is at the heart of the matter: during the period at issue, was Plaintiff able to perform the work of a receptionist?  Plaintiff bears the burden of showing that she was unable to do so, and she has not persuaded this Court that the ALJ erred in concluding that she could.

receptionist, the ALJ reviewed the evidence of record and made four findings of fact: 1) an August 2005 consultative examination "noted essentially normal use of the hands except for some difficulty opposing the pinky and thumb in the right hand" (Id.); a January 2006 consultative examination "had similar findings" (Id.); review of treating physician records did not show any further problems (Id.); and "[t]reatment notes indicate that carpal tunnel surgery in both hands were successful."  (Id.)  Crucially, while Plaintiff's brief recites the history of hand problems and treatments at length, Plaintiff does not argue that the ALJ erred in making any of these findings of fact.  These four uncontested findings of fact constitute substantial evidence. The ALJ's conclusion that Plaintiff retained sufficient use of her hands to perform her past work as a receptionist is supported by substantial evidence.

> Plaintiff also tries to make much of this statement by consultative physician Dr. Finley:
>
> I think that a musculoskeletal CE should be purchased now, with special emphasis on the claimant's manipulative functions; if these are not essentially normal, then I do not think that the claimant can perform the functions of her past work (receptionist) or of the full range of unskilled sedentary work.

(Tr. 282.)  The problem for Plaintiff is that this statement is conditional and does not in and of itself show a material limitation of hand function, nor does it state that Plaintiff cannot perform her past work.  It is at best suggestive of that conclusion but, as just discussed, the ALJ relied on other evidence to make his uncontested factual findings regarding Plaintiff's ability to use her hands.  Furthermore, as the Commissioner observes, a musculoskeletal evaluation was subsequently performed and, when Dr. Finley saw the results of it, he opined that Plaintiff's manipulative functions were "virtually normal."  (Tr. 288.)

### 2.   Difficulties with the back and knees

Plaintiff next contends that the ALJ overlooked Plaintiff's severe knee arthritis, and that

functional limitations due to knee and back problems were observed by three consulting physicians, Drs. Wilchfort, Fernando, and Briski.  At the outset, however, the problem for Plaintiff is that the functional limitations she alleges – difficulty bending, stooping, climbing stairs, crouching, and kneeling – would not appear to interfere with sedentary work.  Plaintiff does not contend that her past work as a receptionist required bending or any of the other actions that she asserts are limited.  Thus, even if Plaintiff were correct that the ALJ overlooked Plaintiff's knee and back problems, Plaintiff has not persuaded this Court that such difficulties are likely to impact the capacity for sedentary work.

<em>3.    Difficulties with the eyes</em>

Plaintiff next contends that the ALJ conceded that Plaintiff had glaucoma, but discredited the evidence of eye problems.  Yet Plaintiff points to no evidence which would support a conclusion that any eye problems would impact the residual functional capacity assessment. Plaintiff's brief notes that two of the consulting physicians, Drs. Wilchfort and Fernando, documented vision problems.  (Pl.'s Br. 20-21.)  While Dr. Wilchfort did diagnose glaucoma and "decreased vision in the left eye," he made no assessment of functional capacities.  (Tr. 246.)  Dr. Fernando diagnosed glaucoma, and made a concluding statement finding "moderate limitation for bending at the waist," but he said nothing about limitations due to the glaucoma.  (Tr. 286.) Plaintiff has not pointed to any evidence of record that shows that her visual impairments have impacted her capacity for sedentary work.  Plaintiff bears the burden of proof of disability.  In the absence of any record evidence showing that the visual problems were disabling, this Court cannot conclude that the ALJ erred in this regard.

<em>4.    Difficulties with mental health</em>

Plaintiff next argues that the ALJ ignored Plaintiff's diagnosed depression.  This is

11

incorrect: the ALJ expressly considered Plaintiff's depression, but cited and relied on the opinions of two consulting physicians in characterizing it as "mild."  (Tr. 42.)  This is supported by the evidence of record.   Dr. Roy evaluated Plaintiff and described her depressive symptoms as "relatively mild."  (Tr. 242.)  Dr. Weitzman performed a psychiatric assessment, found a depressive disorder, and assessed Plaintiff's functional limitations as "mild."  (Tr. 253, 260.) Plaintiff does not argue that mild functional limitations have a disabling impact on her residual functional capacity.  The ALJ's implicit conclusion that Plaintiff's depression did not materially impact her functional capacity is supported by substantial evidence.

Plaintiff next argues that the ALJ failed to consider or discredited Plaintiff's subjective complaints of pain.  As already discussed, the ALJ, in large measure, relied on the assessments of the medical experts.  The relevant statutory provision states:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).  The ALJ's reasoning reflects the statutory mandate.

Plaintiff next attacks the ALJ's residual functional capacity determination at step four on a number of grounds, but many of these are either too general to merit specific discussion, or rehash earlier points.  This Court has already covered the four areas of alleged substantial limitation (hands, back/knees, vision, and mental health) and found no error in the ALJ's findings of no substantial impact on the ability to perform sedentary work.  Plaintiff's only truly

12

new argument contends that her documented limited ability to bend at the waist affects sitting. This might have been a good argument had Plaintiff offered something to support it, but Plaintiff offers nothing in support, and this Court cannot rely on an assertion of a medical fact without any evidence.

The ALJ's determination that Plaintiff retained the residual functional capacity to perform the full range of sedentary work activity is supported by the assessment of consultative physician Dr. Bilski, who found that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and sit for six hours out of an eight-hour workday.  (Tr. 275.)  This constitutes substantial evidence.

Lastly, Plaintiff attacks the analysis by which the ALJ concluded that Plaintiff's residual functional capacity was sufficient to allow her to perform her past relevant work.  Plaintiff's approach, however, is puzzling.  Plaintiff first contends that Plaintiff's past work as a receptionist best fits DOT code 237.367-038, which specifies that the job has an exertional level of sedentary work.  (Pl.'s Br. 39.)  Plaintiff then argues that Plaintiff's work was actually different from DOT code 237.367-038 in that it was more physically demanding, and that it should be considered to require a capacity for light work, not sedentary work.  Curiously, Plaintiff neither provides argument justifying the  higher level of exertion nor points to any evidence that supports her position.  Plaintiff has not persuaded this Court that the ALJ erred in considering her past work as a receptionist to be sedentary work.  To the contrary, Plaintiff appears to agree that, as a general matter, receptionist jobs involve sedentary work.

Furthermore, even if Plaintiff had persuaded that her past work required the "light work" level of exertion, Social Security Regulation 82-61 permits the ALJ to apply a test using the DOT description:

Three possible tests for determining whether or not a claimant retains the capacity to perform his or her past relevant work are as follows:

. . .

3.  Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.  (The Dictionary of Occupational Titles (DOT) descriptions can be relied upon -- for jobs that are listed in the DOT -- to define the job as it is usually performed in the national economy.)  It is understood that some individual jobs may require somewhat more or less exertion than the DOT description.

A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

Thus, pursuant to these provisions in SSR 82-61, even if Plaintiff were correct that her past work as a receptionist required a "light work" level of exertion which she could not perform, it was nonetheless correct for the ALJ to compare Plaintiff's residual functional capacity with the functional demands generally required by employers.  Since Plaintiff concedes that receptionist positions generally require sedentary work, and since Plaintiff has the residual functional capacity to perform sedentary work, applying the third test in SSR 82-61 compels the finding that she is not disabled.

Having reviewed the ALJ's opinion, this Court finds that the Commissioner's decision is supported by substantial evidence and it will be affirmed.

14

**III.  CONCLUSION**

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

  s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: September 23, 2010